Our second case this morning is Bronson v. Lurie Children's Hospital of Chicago. Thank you. Thank you. Thank you, Your Honors. May it please the Court, Your Honors Counsel. My name is Mark Flores, and I represent Lurie Children's Hospital and Ms. Susan Rohonen, and we seek the affirmance of the dismissal of this case by Judge John Lee of the Northern District of Illinois for the following three reasons. As noted by this Court and this honorable panel, Title VII is not going to apply in this case because there is no employer-employee relationship, and the pleadings make clear that there cannot possibly be any employer-employee relationship based on the factors that we've just discussed in brief a few moments ago. Second, with regards to the claim for tortious interference under state law as well as 42 U.S.C. 1981, there's been no allegation of any sort of contract that's been breached. Without a breach of a contract, you can't have a tortious interference claim, and once again, the District Court acted properly in dismissing this action at this stage. And finally, with regards to the pleadings themselves, again, this Court is correct. There are a number of factual statements, a number of factual affirmance that have been made in this complaint that foreclose any possibility that you could ever have either the employer-employee relationship that is necessary for Title VII or for that matter, and a claim for tortious interference, whether it be under state law or whether it be under 42 U.S.C. 1981. Well, let's start from the top. Under your characterization in the briefs of the joint employer standard, is there ever a situation where a CPS teacher could sue the hospital for employment discrimination? Your Honor, under the facts that have been pled in this instance, we do not believe that there is that opportunity for Ms. Bronson to do so. Whether or not there are facts that could be pled that would merit that type of consideration of an employer-employee relationship is perhaps another case and would require some speculation on my part. But I think when it comes down to it that there are certain facts that are evident of an employer-employee relationship that don't exist here, whether it be for the fact that they were just not included in the complaint or whether it be for the fact that they just really don't exist. For instance, Your Honor, there's no sorts of allegations with regards to the setting of a schedule or directing of work, determining of the assignments. There's not even an allegation that she ever received a W-2 form or anything like that, and all these are the types of things that could have been included in a complaint, assuming, of course, that they could be made in good faith under Rule 11, that might have led to a different analysis here. But what we have here is, frankly, factual affirmance that completely established that there is no control and supervision, which, of course, is one of the chief factors when it comes to the night test. How do you see no control when Lori dictated her workspace, her day-to-day supervision, her ability to access health records, which are fundamental at a hospital? Why are those not evidence of control at the pleading stage? Thank you, Your Honor. And I understand the question with regards to the control, so to speak, that Lori had over the workspace and those issues, but I think fundamentally also that was alleged was that CPS was always the entity that was controlling the conversation, so to speak. So CPS was, according to the paragraphs 27, 29, and 48 of the complaint, going in and instructing Lori Children's Hospital, you have to provide this adequate workspace, and then the hospital would work in collaboration with CPS in order to make sure that would happen. The same is true with regards to the other issues that were discussed. For instance, with regards to the EPIC access, the EPIC access was a consideration by the hospital that was based solely on the scope of Ms. Bronson's work. Well, when push came to shove, the complaint is pretty clear, and again, this is the pleadings that were made by Ms. Bronson that must be accepted as true, that CPS was a person who directed what the scope was. They had to reach out to CPS to ask, what is the scope of Ms. Bronson's responsibility here? What is she actually doing? And then at that point, Lori was, you know, took action pursuant to whatever the scope was, whether it be the access to EPIC or anything like that. Forgive me, but if we focus on Ms. Bronson's Title VII claim for a hostile work environment, couldn't Lori be her de facto employer if we took a specific rather than a general approach to control? Well, I realize there's a question whether she has forfeited this argument, and also whether she preserved a hostile environment claim, but I'd like to get your response on the substance. Because if she was being harassed by Lori employees, for example, wouldn't, I mean, wouldn't Lori have some obligation, or let me put it this way, wasn't it Lori's obligation to step in and address the problem? Thank you, Your Honor. And, Your Honor, I think you've hit on a point that is, once again, goes to the idea of things that weren't pled and things that weren't in the record. You know, with regards to the specific control test, you know, to my obligation, it's very clear that if an affiliate directed a discriminatory act, practice, or policy of which an employee is complaining, that indeed there is the opportunity for that affiliate to be considered a de facto employee or employer-employee relationship. But once again, the court's going to look at the economic realities of the situation as well as the controller's supervision. To that end, again, speaking hypothetically, I think there probably is a set of facts that might lead to that conclusion, but with all due respect, those facts aren't pled here. There's nothing in here that talks about the idea of a severe and pervasive situation that was being permeated over at Lori Children's by either Ms. Rohanen or Lori Children's supervision and staff. There's no discussion about any sort of conduct that was frequent or severe as required in Whitaker v. Northern Illinois University, 7th Circuit, 2005, 424, 3rd, 640. There's no discussion whether it was threatening or humiliating conduct. There's no discussion of really any conduct that has any basis with regards to race at all, with the exception of a categorization of the staff by race itself. There's certainly nothing about harassment, unreasonably interfering with an employee's work. And as this court is aware, federal law is not meant to protect against petty slights, minor annoyances, or bad manners, as seen in the Northern District of Illinois 2016, Adam v. Obama for America. And again, in another case out of the Northern District, allegations of denied tools and poor reviews is not going to meet the standard that's required to show a hostile work environment. In this instance, there's no sort of pleadings. And for that reason, we believe the district court acted properly in not considering the same. Not to mention, of course, that, again, the specific control test was never actually raised in the motion to dismiss stage and was only raised before this honorable court. And a party that fails to press an argument before the district court indeed does waive, as Chief Judge Sykes recognized, the right to present the argument on appeal at this point. Bronson v. O'Leary. Again, unless the plain error is so significant as to warrant a question of the fairness, integrity, or the public reputation of the judicial proceeding at hand. We believe it's clear that it does not at this stage. As to the economic realities of the situation, and getting back to whether or not there was any control and supervision, the pleadings make clear. CPS hired Bronson. Laurie Children's did not. The pleadings also make clear, in paragraph 102, she was a teacher that was under contract with CPS. CPS assigned her work. It doesn't say anything in here about Laurie Children making a selection. There's no issues with regards to that. And it's interesting. There's all this rank speculation about, well, she may have signed an agreement. She may have done this. We need to do some discovery as to what may or may not be there. Which leads one to question, well, why isn't it there in the first place? She obviously knows, if she actually signed something, she would be able to put that into her complaint. And under Rule 12B, she has an obligation to state factual averments that would give rise to a claim, or at least make one facially plausible, under the Iqbal Twombly line of cases. That wasn't here. Rather, there's more allegations that are being made that clearly show that there was no control and supervision. I continue. CPS had the ultimate authority to discipline and terminate, as stated in paragraph 29. Now, I understand that it would like to be written off as simply an email from the Chicago Teachers Union that's informing Ms. Bronson and Ms. Rohanen and Laurie Children of their obligations and their rights under whatever agreement may or may not exist. But, you know, more importantly than that, the very first sentence of that same paragraph is indicative of the power of these types of email. If you take a look at it, Ms. Rohanen actually went out and stated some complaints about plaintiff's conduct. And in response, according to this paragraph that must be accepted as true, plaintiff went to the Chicago Teachers Union and Susan Rohanen was removed as plaintiff and Cooper's representative supervisor. Again, when you take this in context with the email, it's pretty clear that no reasonable inference could ever be given. And again, it's a reasonable inference. Not every inference in favor of the nonmovement, but it's a reasonable inference that there's no possibility that any reasonable inference could ever be given in favor of the idea that this was simply an advisement of the rights that Ms. Bronson might have. Especially in context of the actual first sentence of that complaint, let alone the entirety of the allegations that were made. Again, Ms. Bronson's complaint, getting back to Your Honor's question regarding workspace, went to CPS. It didn't go to Lurie Children's, and then CPS worked with Lurie Children's to come up with a solution. Ms. Bronson's complaints are broader than that, than just the workspace issue, than just the issue that CTU resolved by having Ms. Rohanen removed as her supervisor. Which brings me to my section 1981 question. Why is Ms. Bronson barred from making a 1981 claim when it exists particularly for cases in which the defendant is not party to a contract? Correct. And Your Honor, I think the underlying element of your question is the problem that Ms. Bronson faced, which is that there's just not a contract there. There's been no pleading of a contract that existed. There's been no mention in response to the motion dismissed of another contract that might have been breached. And I think it's fundamental that tortious interference, whether it be in the 1981 context based on race or tortious interference under state common law, requires a valid contract, defendant's knowledge of the contract, defendant's intentional and unjustified inducement of a breach of the contract, and then a subsequent breach of contract caused by defendant's wrongful conduct. In this instance, there's been no breach. There's been no contract that's been alleged to have been breached. If any contract would have been alleged to have been breached, then we might have a different story at this point. But the unfortunate part for this complaint and the reason the district court acted in the way it did is because, once again, a prima facie element is missing. In fact, the court did key in on the one contract that it could find that might fit into one of these claims, and that being the CBA that existed, buying between Bronson with CPS, CTU. And even then, there wasn't a breach of that contract itself. In fact, if anything, it was enforced. Any time that there was any question with regards to the workspace issue, for instance, and this was part of the contract that was in existence, buying between Bronson and CPS and CTU, they went out there and they said, Lurie Children's, you're going to make this happen. You're going to abide by the terms of the contract that we have in place here. And as a result of that, that's how it worked. It was enforced. There wasn't any sort of negative alteration to it. There was no breach, and there hasn't been one alleged at this time. And as a result, Your Honors, we believe that it's clear that, again, there's no tortious interference claim, certainly under state law and certainly under 42 U.S.C. 1981, as there's been no allegation that race motivated any of this. The district court, you are correct, did focus on the contract that it identified, which was CPS-CTU with Ms. Bronson. Ms. Bronson, in her complaint, points to the same cluster of harms that she alleges elsewhere in the complaint for her 1981 count. And we have said that you can analyze a 1981 just as you can a Title VII. So why is Ms. Bronson barred from proceeding as she did with her complaint and pointing to all of the Title VII harms she referenced earlier when getting to her 1981 count? Thank you, Your Honor. And I think it goes back to what we've been talking about earlier with regards to the idea that there's been no facts pled that would otherwise indicate that. Moreover, I would add, in the same way that the argument with regards to specific control was not raised ever before the district court, whether it be in the response to the motion to dismiss or otherwise, the same argument, you know, wasn't specifically raised in the response to the motion to dismiss, at least not based upon my recollection of the record. I don't recall seeing it in there. And as a result, once again, we have this question where the district court can only rule on the issues that are raised before it. The district court order that this court is currently considering is the order that needs to either be affirmed or reversed. And if it's reversed, vacated and sent back to the district court for further proceedings. But the one thing that is clear is that there's only one order, possibly two, if we consider the motion to reconsideration, which we would argue is improper as a district court didn't abuse its discretion in denying the same. But regardless, these rules of order are set forth for a reason, and that's to avoid any sort of speculative or a dicta that might be contained in an opinion that's going to guide this court's jurisprudence in the future. With that said, Loree Children's and Ms. Rohanan, we respectfully request that this court affirm the dismissal of all claims by the Northern District of Illinois at this time. Thank you, Your Honors. Thank you. Ms. Frederick. Your Honor, counsel has made a number of arguments that I believe are inconsistent with the complaint and the facts in this case. His assertion that CPS was the controlling party is simply not supported by the facts herein. The fact that CPS or the Chicago Teachers Union advocated on behalf of Dr. Bronson but were unable to secure her access to EPIC, which was necessary for her to perform her responsibilities related to education of those students in the hospital. CTU and CPS advocated on the workspace issue, was not able to get that situation resolved. The harassment, the complaints, the ostracizing of Dr. Bronson from other employees, the demeaning and humiliating instances where she was called in a row and asked if she could read. A woman with a master's and a PhD asked if she could read in front of one of her patients. The harassment underscores the fact that even though CPS contacted Lori on behalf of Dr. Bronson, these things didn't change. So CPS was not the controlling factor. Lori and Dr. Rohanen was in charge of that, and CPS was not able to change that. We understand that there's a possibility that the specific control test has been waived, but we submit that we met four of the five factors on the control and supervision. What is your theory of contract for your 1981 claim? What's the contract that you're referring to? The agreement that Dr. Bronson had a contractual agreement with Lori, which required her to go through their training to wear their employee ID, to use their pager, to use their email system, to use their EPIC system, to use their office space. There was an agreement between Lori and Dr. Bronson for her work to be performed there. You didn't plead the existence of a contract between your client and the hospital. The only contract that's mentioned in the complaint is the one between your client and Chicago Public Schools and the Teachers Union. So this has to be an interference type of a 1981 claim, not a direct claim. You're right. With regard to the district court's dismissal of the 1981 claim, the court found that we had not stated a claim because we failed to plead that the defendants had torturously interfered with her contractual right to adequate work space under the collective bargaining agreement. There are two problems with that analysis. The district court impermissibly assumed that the only contractual relationship between Dr. Bronson and CPS was between Dr. Bronson and CPS. There's no basis in the pleading to assume that Dr. Bronson did not sign some sort of agreement with Lori. Only discovery will tell. Second, the district court's fixation on the tortious interference angle ignored Dr. Bronson's hostile work environment claim. It is well settled that a plaintiff may plead a hostile work environment claim under Section 1981 by showing that her supervisor discriminated against her on the basis of race. Here the district court implicitly I'm going to have to stop you. Your time has expired. I appreciate it. Thank you so much. Thank you. Our thanks to both counsel. The case is taken under advisement. And at this point we'll take a 10-minute recess.